IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUJIE CHEN, CHENLI LIN, XIA LIN, QING CHEN, and BAOZHU WEI, individually and on their own behalf and on behalf of all other similarly situated employees,<br><br>     Plaintiffs,<br><br>  v.<br><br>MASA SUSHI HIBACHI AND BAR PA LLC d/b/a MASA SUSHI HIBACHI AND BAR, ZHENGGUAN CHI and FANNY GUNAWAN,<br><br>     Defendants. | Case No. 5:22-cv-05206-KNS |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

**I. INTRODUCTION**

Plaintiffs LUJIE CHEN, CHENLI LIN, XIA LIN, QING CHEN, and BAOZHU WEI (collectively, "Plaintiffs"), and Defendants MASA SUSHI HIBACHI AND BAR PA LLC d/b/a MASA SUSHI HIBACHI AND BAR, ZHENGGUAN CHI and FANNY GUNAWAN (collectively, "Defendants") have reached a settlement in this matter.[1]  Because Plaintiffs alleged a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, among other claims, the Parties hereby submit this Joint Motion seeking approval of the settlement. The Parties respectfully request that the Court approve the settlement because it is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

**II. BACKGROUND**

---

[1] Plaintiffs and Defendants are hereinafter referred together as the "Parties".

1

MASA SUSHI HIBACHI AND BAR PA LLC d/b/a MASA SUSHI HIBACHI AND BAR ("MSHB"), ZHENGGUAN CHI ("Chi") and FANNY GUNAWAN ("Gunawan") owned and operated a restaurant in Wyomissing, Pennsylvania.

Plaintiffs allege that they each worked for MSHB's restaurant for a certain period of time. Specifically, Plaintiff LUJIE CHEN alleges that she worked at MSHB for its restaurant as a waitress from around February 13, to around June 18, 2018, and from around December 10, 2018, to around July 31, 2021. Plaintiff CHENLI LIN alleges that she worked at MSHB for its restaurant as a waitress from October 25, 2021, to around December 21, 2021, and from around April 15, to November 25, 2022. Plaintiff XIA LIN alleges she also worked at MSHB for its restaurant as a waitress from around May 13, 2021, to around January 9, 2022, and from around April 25, 2022, to November 25, 2022. Plaintiff QING CHEN alleges that he worked at MSHB for its restaurant as a sushi chef from around September 1, 2018, to around June 31, 2019, and from around July 6, 2021, to November 23, 2022. Plaintiff BAOZHU WEI alleges that she worked at MSHB as a delivery packer and kitchen helper, from around July 6, 2021, to around March 31, 2022, and from around May 1, 2022, to November 25, 2022.

On December 28, 2022, Plaintiffs filed this lawsuit, alleging that Defendants violated the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 *et. seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.8, *et seq.*, and Pennsylvania common law by failing to properly compensate Plaintiffs for all hours worked. Specifically, Plaintiffs allege that Defendants improperly failed to pay overtime compensation to Plaintiffs. Further, Plaintiffs allege that Defendants' conduct was willful.

In response to Plaintiffs' allegations, Defendants deny improperly failing to pay minimum and overtime compensation to Plaintiffs. Defendants also maintain that all of their actions were

done in good faith and with reasonable grounds for believing they were in conformity with the FLSA and state law requirements.

As part of the Parties' meet-and-confer conference, and in recognition of the costs and uncertainties of litigation, they began discussing and exploring possible resolution of Plaintiffs' claims. In subsequent numerous communications, the Parties exchanged documents and information concerning the facts and claims underlying this matter, including Plaintiffs' time, pay, job duties, and work schedules. The overall exchange of information enabled the Parties to gain a clear understanding of the nature of the claims and possible defenses at issue in this case.

Having gained an understanding of the relevant facts with more clarity, the Parties engaged in rigorous, arms-length settlement negotiations, each represented by counsel experienced in wage-and-hour matters. On or around July 19, 2024, the Parties reached a settlement-in-principle, which they memorialized in a written Mutual Release and Settlement Agreement (the "Settlement Agreement"), which is attached hereto as **Exhibit 1**.

### III. ARGUMENT

Although the Third Circuit has yet to address the question of whether wage claims under the FLSA may be settled without court approval, "district courts within the Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary." *See Lyons v. Gerhard's Inc.*, Civ. A, No. 14-06693, 2015 WL 4378515, at *3 n.1 (E.D. Pa. July 15, 2015). A proposed settlement should receive judicial approval if it represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Schwartz v. Pa. State Univ.*, Civ. A. No. 4:15-cv-02176, 2017 WL 1386251, at *2 (M.D. Pa. Apr. 18, 2017) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). To determine this, courts assess whether (A) a bona fide dispute between the parties exists; (B) the settlement is fair and reasonable to the plaintiff-employee; and (C) the settlement does not frustrate

implementation of the FLSA in the workplace. *Id.*; *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 523 (E.D. Pa. 2016); *Lyons*, 2015 WL 4378515, at *3; *see also Lynn's Food Stores*, 679 F.2d at 1355. The Parties' settlement should be approved because it meets these three requirements. In addition, the settlement contains a reasonable provision for attorneys' fees.

### A.     A Bona Fide Dispute Between the Parties Exists

"A dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus*, 155 F. Supp. 3d at 530. "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Id.*; *see also Berger v. Bell-Mark Techs. Corp.*, No. 1:17-cv-1836, 2019 WL 1922325, at *3 (M.D. Pa. Apr. 30, 2019) ("A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial."). Here, a bona fide dispute exists as to both Defendants' liability and Plaintiffs' damages under the FLSA. As evidenced by Plaintiffs' Complaint and Defendants' documents as well as the information exchanged between the Parties, this lawsuit involves disputed issues of fact over whether Defendants properly compensated Plaintiffs for all hours worked and thereby properly paid them for all overtime they worked, and whether Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs.

Plaintiffs each alleges their work schedules and total hours they worked for a regular workweek throughout their employment with MSHB. Plaintiff LUJIE CHEN alleges that she worked more than forty hours per workweek; the total hours she worked during each of her workweek ranges from fifty-four hours and forty minutes to sixty-eight hours and ten minutes per workweek. Plaintiff LUJIE CHEN further alleges that she received a base payment of $15 in cash per day regardless of how many hours she worked. *See* Compl. ¶¶ 40-52. Plaintiff CHENLI LIN alleges that she worked more than forty hours per workweek; the total hours she worked during

4

each of her workweek ranges from fifty-six hours and forty minutes to sixty-seven hours and forty minutes. Plaintiff CHENLI LIN further alleges that she received a fixed daily rate for her workdays no matter how many hours she worked. *See* Compl. ¶¶ 53-65. Similarly, Plaintiff XIA LIN alleges that she worked over forty hours, about sixty-seven hours and forty minutes per workweek; she was not compensated by hours and instead received a base payment of $15 in cash per day regardless of how many hours she worked. *See* Compl. ¶¶ 66-75. Plaintiff QING CHEN alleges that he typically worked sixty-three hours and ten minutes per work week or even seventy-three hours and forty minutes each week due to the shortage of labor at Defendants' restaurant; he was compensated a weekly salary regardless of how many hours he worked. *See* Compl. ¶¶ 76-84. Plaintiff BAOZHU WEI alleges that she worked about sixty-three hours and ten minutes per workweek and was paid a monthly rate no matter how many hours she worked per week. *See* Compl. ¶¶ 85-90.

Defendants deny these allegations and contend that Plaintiffs were paid for hours they worked, and that the payment was made properly. Defendants contend that they maintain legally compliant policies and practices in place concerning job duties, work hours, and compensation.

Based on the foregoing, a bona fide dispute exists regarding the validity of Plaintiffs' FLSA claim.

### B. The Settlement Represents a Fair and Reasonable Resolution of the Parties' Dispute

In determining whether an FLSA settlement represents a fair and reasonable resolution of a dispute, courts often consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). *Kraus*, 155 F. Supp. 3d at 523 n.3. The factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157-58. Because *Girsh* was a class-action case, however, some of the factors are of "little help, if not irrelevant in the single-plaintiff context." *Howard v. Phila. Housing Auth.,* 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016); *see Kraus*, 155 F. Supp. 3d at 523 n.3 ("Even though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying Girsh simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable."). Application of *Girsh* factors compels a finding that the Parties' settlement is fair and reasonable.

As to *Girsh* factor 1 (complexity, expense, and likely duration of the litigation), as discussed, the Parties principally dispute whether Defendants properly paid Plaintiffs for all hours they worked, including overtime hours. Continued litigation and discovery of those issues will be costly, complex, and time-consuming, as it would require detailed analyses of Plaintiffs' job duties, work hours, pay, benefits, and attendance/scheduling data for Plaintiffs, and other business records, as well as documents and information concerning Defendants' timekeeping and pay policies and practices. It would also require numerous depositions of witnesses, including all Plaintiffs, multiple representatives of Defendants, as well as customers of MSHB.

As to *Girsh* factors 2, 6, and 7, applicable to class actions, all Plaintiffs deem the proposed settlement as a reasonable measure to resolve the dispute. Plaintiffs favor the settlement as it is an acceptable approach to compensate them for the damages they allege.

As to *Girsh* factors 4, 5, 8, and 9 (the risks of establishing liability and damages and the range of reasonableness of the settlement in light of the best possible recovery and all the attendant

6

risks of litigation), even if Plaintiffs undertook the costly, complex, and lengthy discovery necessary to fully litigate this matter, they would still face the risk that they could not establish liability and damages. Moreover, even assuming Plaintiffs could establish liability at trial, they would face difficulty mustering proof of the number of actual hours they allege they worked each workweek to recover damages in an amount exceeding the settlement amount.

The settlement is considerable in light of the risks Plaintiffs face in establishing liability and damages at trial. Although Plaintiffs' counsel contends that Plaintiffs' claims are meritorious, Plaintiffs' counsel is experienced and realistic, and understands the risks involved in trial. The settlement amount is thus eminently reasonable in light of the distinct possibility that Plaintiffs may recover far less than the settlement amount or nothing at all after lengthy and expensive litigation.

As to *Girsh* factor 3 (stage of proceedings and amount of discovery completed), the Parties exchanged documents and information in response to each other's settlement demands. These documents and information allowed the Parties to adequately assess the merits of Plaintiffs' claims and Defendants' anticipated defenses. The settlement was reached by the Parties each with a clear understanding and appreciation of their positions and the attendant risks and uncertainties of continued litigation in pursuing them. The Parties signed the Settlement Agreement (Exhibit 1) after rigorous, arms-length negotiations in which they were each represented by counsel experienced in wage-and-hour matters. This further militates in favor of a finding that the settlement is fair and reasonable.

Based on the foregoing, the relevant *Girsh* factors are met. Accordingly, the Court should find that the Parties' settlement represents a fair and reasonable resolution of their bona fide dispute.

    **C.**    **The Settlement Does Not Frustrate the Implementation of the FLSA**

The Settlement Agreement does not frustrate the implementation of the FLSA in the workplace because the release and confidentiality provisions of the Parties' Settlement Agreement are properly limited. *See Schwartz*, 2017 WL 1386251, at *3 (indicating that scope of release and confidentiality provisions are proper considerations for this prong, citing cases).

Considering that Plaintiffs have filed wage and hour claims in this lawsuit against Defendants, the Release of Claims provision in the Parties' Settlement Agreement provides for a fair and reasonable mutual general release of claims that were raised or could have been raised in this lawsuit and wage-and-hour-related claims arising before the date of the Settlement Agreement. *See* **Exhibit 1**, ¶¶ 5, 6. Accordingly, this mutual general release does not frustrate the implementation of the FLSA. *See Bettger v. Crossmark, Inc.*, No. 13-cv-2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015) (noting that district courts generally require FLSA settlements to limit release provisions to "claims related to the specific litigation", citing cases); *Kutz v. Cargill Cocoa & Chocolate, Inc.*, No. 3:19-cv-0176, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019) (approving release "limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in this lawsuit").

The Settlement Agreement's confidentiality provision is limited solely to disclosures of the terms of the Settlement Agreement by Plaintiffs and their counsel to the press and public-facing media. **Exhibit 1**, ¶ 17. District courts in Pennsylvania universally regard such provisions as permissible and not frustrating implementation of the FLSA. *See, e.g., McGee v. Ann's Choice, Inc.*, Civ. A. No. 1202664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving confidentiality provision limiting statements to media, noting "[t]he Settlement Agreement and all filings in this case are publicly available"); *Chickie & Pete's, Wage & Hour Litig.*, Civ. A. No. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) (approving confidentiality clause that

"only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media"); *Owens v. Interstate Safety Serv., Inc.*, No. 3:17-cv-0017, 2017 WL 5593295, at *3 (M.D. Pa. Nov. 21, 2017) (approving confidentiality provision placing limitations on comments to the media). For the foregoing reasons, the Parties' settlement does not frustrate the implementation of the FLSA.

### D. The Settlement Contains a Reasonable Provision for Attorneys' Fees

The award of Attorney's fees to the Plaintiff's counsel is fair and reasonable considering the risk involved, the work performed, and the considerable result achieved. In this action, Plaintiffs' counsel respectfully requests the Court to approve attorneys' fees and costs in the amount of $55,265 as this figure represents $2,897.45 for cost and expenses and $52,367.52, one third of settlement amount of $157,102.55 (after deduction of costs and expenses of $2,897.45 from $160,000) for Plaintiffs' counsel's representation of Plaintiffs. In retaining Plaintiffs' counsel, Plaintiffs entered into a private contingent fee agreement, wherein Plaintiffs agreed that Plaintiffs' counsel would recover thirty-three percent (33%) of Plaintiffs' award, plus costs.

With respect to this request, "[f]ee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Aros v. United Rentals, Inc.*, Civ. A. No. 3:10-cv-73, 2012 WL 3060470, at *4 (D. Conn. July 26, 2012) (D. Conn. July 26, 2012) (quoting *Sand v. Greenberg*, Civ. A. No. 08-cv-7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)). In scrutinizing the fairness of FLSA settlements, and fees paid thereunder, Courts in this District have upheld similarcontingency rates agreed upon between Plaintiffs and their counsel as the contingency rate in the case at bar. In *Adams, et al. v. Bayview Asset Mgmt., LLC*, No. 13-cv-5967 (E.D. Pa. 2013) (Brody, J.), the Court approved a 40% contingency fee for eight (8) different single-plaintiff cases,conditioned upon Plaintiff's counsel representing via affidavit that

9

the contingency fee agreement existed at the commencement of the representation to verify Plaintiff's counsel bore all of the risk of loss by proceeding with such litigation. *Id.* at Docket Entries 7, 10, and 11.  In *Messina, et al. v. Oxford Valley Cardiology Assoc. P.C., et al.*, No. 16-cv-1008 (E.D. Pa. 2016) (Ditter, J.), the Court approved a 40% contingency fee for five (5) different single-plaintiff cases, and in assessing fees noted:  "I find the attorney's fees to be reasonable based on counsels' joint representation that the fees and costs incurred were proportional to the needs of the case and Plaintiffs' counsel's agreement not to seek payment for all services performed in order to facilitate the settlement of this dispute." *Id.* at Docket Entry 24.; *see also Edmondson v. Modern Group LTD., et al.*, No. 14-cv-6706 (E.D. Pa. 2015) (Kearney, J.) (approving contingency rate in single Plaintiff FLSA case); *Parks v. Creative Waste Solutions, LLC, et al.*, No. 17-cv-2559 (E.D. Pa. 2017) (Pratter, J.), Docket No. 23 (approving 40% contingency fee for single-plaintiff FLSA case); *Parris v. Creative Waste Solutions, LLC, et al.*, No. 17-cv-3093 (E.D. Pa. 2017) (Hey, M.J.), Docket No. 20 (same). In the instant case, Plaintiffs' counsel is requesting only a thirty-four and five-tenths percent (34.5%) contingency fee, which is a lower percentage than those approved in the aforementioned cases. *See also Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773 (E.D. Pa. 2016) (Robreno, J.) (recognizing that fee awards for common fund cases generally range from 20-45% of the fund and approving a fee award equivalent to 32.4% of the single-plaintiff fund).

Under the FLSA, the Court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Percentage of recovery," by which counsel is awarded a "fixed portion of the settlement," is the prevailing method used by courts in the Third Circuit for wage and hour cases." *See Kraus*, 155 F. Supp. 3d 516, at 533. In order to evaluate the reasonableness of the attorneys' fee award under this method, courts in this Circuit typically turn to the following factors:

10

>(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of theattorneys involved; (4) the complexity and duration of the litigation; (5) the risk ofnonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and
>(7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) ("Each case is different, and in certain cases, one factor may outweigh the rest.").

As detailed in the Affidavit of Jian Hang, attached hereto as **Exhibit 2,** Plaintiffs' counsel spent approximately 332.8 hours working on this case from the inception of the litigation to the present. *See* **Exhibit 3.** A Lodestar cross-check reveals the reasonableness ofthe award of the fees to Plaintiffs' legal counsel. In this regard the lodestar in this case is around $102,407.5. This lodestar was calculated by multiplying the total number of hours attorneys and clerks worked on this matter by the following the reasonable hourly rate:

|  | Number of hours worked | Hourly rate |
|---|---|---|
| **Attorneys** |  |  |
| Jian Hang | 10.90 hrs | $375 |
| Ge Qu | 4.10 hrs | $325 |
| Guofeng Li | 0.10 hrs | $325 |
| Barbara Bao | 0.70 hrs | $275 |
| Jiaxin Na | 11.90 hrs | $325 |
| Sidney Li | 67.70 hrs | $300 |
| Yongjin Bae | 0.10 hrs | $325 |
| Yuezhu Liu | 1.2 hrs | $325 |
| Zhangyuxi Wang | 42.70 hrs | $325 |
| Ziyi Gao | 156 hrs | $325 |
| **Law Clerks** |  |  |
| Yu Zhang | 25.70 hrs | $200 |
| Jie Shi | 11.4 hrs | $275 |
| **Total** | **332.80 hrs** | **$102,407.50** |

Each of the above attorneys and clerk's professional bio is stated with details in **Exhibit 3**. The professional background of the attorneys and clerks sufficiently reflects that the hourly rate of them is a reasonable figure.

The Lodestar cross-check, taking into account all hours expended by Plaintiffs' counsel in the litigation, reveals a total of $102,407.5. Therefore, Plaintiffs' counsel's request for an attorneys' fees of $55,265 seeking the court's approval is a reasonable figure.

## IV. CONCLUSION

For the reasons stated above, the Parties' settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Accordingly, the Parties respectfully request that the Court grant their Motion and enter an order substantially in the form attached hereto, approving the Settlement Agreement and dismissing the instant action with prejudice.

Respectfully Submitted,

*/s/ Jian Hang*
Jian Hang (PA No. 319709)
HANG & ASSOCIATES, PLLC
136-20 38th Avenue, Suite 10G
Flushing, NY  11354
718.353.8588 (t)
718.353.6288 (f)
jhang@hanglaw.com
*Attorney for Plaintiffs*

Dated:  September 26, 2024

*/s/ Brad M. Kushner*
Brad M. Kushner
STEVENS & LEE
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406
T: 215-751-1949
F: 610-371-7906
M: 609-970-0879
brad.kushner@stevenslee.com
*Attorneys for Defendants*

Dated:  September 26, 2024

## CERTIFICATION OF UNCONTESTED MOTION

    I, Jian Hang, Esq., hereby certify that I conferred with counsel for Defendants regarding the foregoing Joint Motion for Approval of Settlement, and counsel for Defendants do not contest the Motion.

                                         /s/ Jian Hang
                                         Jian Hang, Esq.

Dated: September 26, 2024

**CERTIFICATE OF SERVICE**

I, Jian Hang, Esq., hereby certify that on September 26, 2024, I caused a true and correct copy of the foregoing to be sent to the following counsel via ECF notification:

Brad M. Kushner, Esq.
STEVENS & LEE
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406
T: 215-751-1949
F: 610-371-7906
M: 609-970-0879
brad.kushner@stevenslee.com
*Attorneys for Defendants*

/s/ Jian Hang
Jian Hang, Esq.

Dated: September 26, 2024